day. U. S. Versus Heywood. Thank you. Uh huh. Mr. Sachs? Thank you, Your Honor. Good morning, Your Honor. May it please the Court, Joshua Sachs. I'm here today for, uh, Frederick Haywood, who is appealing from the sentence which Judge, 151-month sentence which Judge Guzman imposed on his plea of guilty to a single count of mortgage fraud. I think most of what we have to argue in this case is pretty thoroughly covered in the briefs. Uh, what seems to me is particularly troublesome is we have an indication in the plea that there is an issue regarding the defendant's proffer. Uh, whether he made a proffer, whether the loss calculation that was applied against him in this case is derived in part from proffer protected statement. The issue was raised in defendant's sentencing memorandum. But it wasn't developed before Judge Guzman at sentencing, and it's not clear why. Uh, the court didn't comment on it at all. Uh, the attorney who was representing Mr. Haywood at the sentencing hearing didn't argue it. The government didn't discuss the issue at all, didn't argue the matter, didn't comment on the matter. And so the question of whether there is a proffer protected statement here, which, if that's true, would have reduced Mr. Haywood's guideline level by two points and might have resulted in a substantially lower sentence. It wasn't developed, and we don't know why. Under those circumstances, I can understand why the government takes the position that the issue is, I think in the government's brief, they used the word waive, whether we're talking about a waiver, which is a deliberate relinquishment or a forfeiture where for some reason it wasn't developed. There ought to be an inquiry into what is behind this, whether there was a proffer protected statement, whether defendant was improperly charged with the entire loss amount, rather than the loss amount, which he agreed to in the plea agreement, less the amount of any matter, any statement that was in fact proffer protected. So in light of your statements, then it's plain error review here. I think that, I don't know, Your Honor. The issue was raised in the memorandum. It was raised in the sentencing memorandum. I think it's adequate to preserve it. You think that even though, as you pointed out, nobody reached it or discussed it. Well, that is true. Nobody reached it or discussed it. So that's why I wanted to know what your view was. The fallback position is that it could be plain error review. I think maybe the most sensible thing to suggest is that if there is, Mr. Haywood may be in a position where he has two options. Either this court remands the case for resentencing, or if Mr. Haywood believes he has an issue here, and there's every reason to believe that he does, he's going to have to try to bring a collateral petition, probably a 2255. Whether this falls within the proper ambit of a 2255 petition, I don't know. I will tell the court, I just found this out the other day, Mr. Haywood did file a 2255 petition. I haven't had a chance to more than skim it. I don't think this question is raised in his 2255. If this court determines that this is not a proper issue for review here, he might have to amend his 2255. I think the sensible thing is, whether it is technically a waiver or a forfeiture or not, this court has the power to send the case back to the district court for review and determine what is going on here. Is there an issue that needs to be developed? Other than that, Your Honor, is there questions? Yes, Your Honor. We're going to have to recheck the math, but it may still add up that he's over a million. I tried to do that, Your Honor, in my brief. If we take Mr. Haywood's representations as correct, the loss amount was roughly 1,500,000. The proffer protected amount was approaching 500,000. If we accept all of Mr. Haywood's claims, it will bring it down from a 16 level to a 14 level. Obviously, if the judge were to find that some but not all of his amount was proffer protected, it might not bring it down. But the problem here is we just don't know. This issue is totally undeveloped on this record, and that's why I suggest that a remand is the appropriate remedy. All right. Thank you. Thank you. Mr. Yonan. May it please the Court. Good morning. My name is Jason Yonan, and I am appearing today on behalf of the United States. On the issue of the district court's loss calculation and whether or not that calculation included proffer protected statements, as the defendant's counsel just mentioned, the loss calculation itself was based on the defendant's plea agreement. In the plea agreement, the defendant admitted to being involved in 65 fraudulent real estate transactions, which resulted in losses to the victim lenders of approximately $1.4 million. That was in the agreement. The transactions were specifically listed in attachment A to that agreement, and that was what the defendant agreed to. At no time during the change of plea did the defendant raise any issue about transactions being included against him in violation of any proffer agreement that he had. Were they included, transactions that came into existence as a result of the proffer discussions? I can answer that, Your Honor. Because that hasn't been answered, really. It hasn't. I can go outside. I can answer that. I don't know if it's on the record, Your Honor. There was one transaction that the government learned about via a proffer with the defendant, and pursuant to the terms of the proffer, the government obtained that loan file. It used the lead's information, which it could do, obtained that loan file and determined that it was a fraudulent transaction. The other transactions, it's my understanding, we had those loan files. We knew that they were fraudulent. There was one file where we didn't use the defendant's proffer statement. We used his statement to go out and get information. Then we determined that that transaction was a fraudulent transaction. On the issue of the defendant raising this issue, the only time he raised it was in his sentencing memo. And the reason it is undeveloped is because it was not a principal argument the defendant raised before the district court. So do you think that's enough to avoid plain error? I don't think there's any error, Your Honor. It was not a principal argument that was raised before the district court. The district court didn't need to address the issue. It was the only time it was raised in three or four sentences in the defendant's sentencing memorandum, which was filed late. It was not raised at any time during the sentencing hearing itself. The district court doesn't need to sua sponte, address these issues that the defendant's counsel isn't even raising himself at the sentencing hearing. And in the sentencing filing where it was raised, on that very same page, the defendant agreed that the loss amount was over $1 million. It was $1.4 million. So I don't think it's the district court's responsibility to address this issue when it's not been fairly and accurately presented to it. And there's no reason to remand the case because it was not a principal argument that was raised before the district court. There was more than enough in this record to support the district court's finding that the loss amount was over $1 million based on the defendant's plea agreement. There's nothing in the record to support the theory that properties were used in violation of this proffer agreement. So there's no reason to remand the case. This was not presented to the district court. It was not a principal argument presented to the district court. And for that reason, the district court's conviction in sentence should be affirmed. Now, appellate counsel says the losses from the three addresses add up to $486,000. But I think that actual figure is $423,750. Is that right? I didn't actually calculate them, Your Honor. I can't. I don't know the exact answer to this. But it would be, even under his calculation, just under $1 million. Under the calculation the court just raised would be just over $1 million. And I think it's significant to look at how the district court handled the sentencing in general. We're talking about, even under his theory of the case, just under $1 million. When the district court was clearly troubled by this individual's actions, and specifically noted on the record that, look, even if these issues were resolved, even if some of these guideline issues were resolved differently, I would be imposing the same sentence because, of course, this defendant continued to engage in fraudulent conduct while on pretrial release in front of the district court. So even if we're talking about just under $1 million or just over $1 million, it didn't have any effect on the decision of the district court as to what the correct sentence was in this case. Well, it would have some impact on the guideline calculation. If, in fact, it was just under $1 million, the guideline range would be a 14-level enhancement as opposed to a 16-level enhancement. But I think what the district court's statement was, even if that's the case, Your Honor, the error is harmless because the district court was very clear that he would have imposed the same sentence in this case regardless of how these contested issues would have been resolved. So unless the panel has any other questions, I would ask that the district court's conviction and sentence be affirmed. Thank you. Thank you. Mr. Sachs, how much time? Three minutes. You have three minutes, Mr. Sachs. Thank you, Your Honor. An issue as to whether the loss amount should be reduced by two points is a substantial issue. It's a principal argument in the sense that it makes a big difference in the outcome. What Judge Guzman would have done if he did the loss calculation of the leadership role argument, which we haven't discussed today, but it's in the briefs, if those had been different, I don't know. He may have felt that this was a fair sentence, but it's not at all clear that he would have, in fact, come out with that 151-month sentence that was the bottom of the guideline at the level he believed to be correct if the guideline result had actually been different. Unless there are any questions, Your Honor, I will stand on the briefs. All right. And you were appointed, weren't you, Mr. Sachs? I was, Your Honor. So we appreciate all your efforts on behalf of your client. We actually couldn't function without lawyers like you that are willing to take on these cases.